# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kirill Zolotukhin, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> QUDIAN INC., MIN LUO, CARL YEUNG, CHAO ZHU, LI DU, SHILEI LI, YI CAO, LIANZHU LV, MORGAN STANLEY & CO. INTERNATIONAL PLC, CREDIT SUISSE SECURITIES (USA) LLC, CITIGROUP GLOBAL MARKETS INC.,CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, UBS SECURITIES LLC, STIFEL, NICOLAUS AND COMPANY, INCORPORATED, NEEDHAM & COMPANY, LLC, NOMURA SECURITIES INTERNATIONAL, INC., <br> Defendants. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Kirill Zolotukhin ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Qudian, Inc. ("Qudian" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired Qudian's American Depository Shares ("ADSs"): (1) pursuant to or traceable to the Company's initial public offering commenced on or about October 17, 2017 (the "IPO"); and/or (2) on the open market between October 18, 2017 and November 20, 2017, both dates inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

2.      The federal law claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o, and Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 22 of the Securities Act, 15 U.S.C. §77v. In connection with the acts, conduct and other wrongs alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the U.S. mails, and interstate telephone communications.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 22 of the Securities Act because the false and misleading statements at issue took place and had an effect in this District.

## PARTIES

**The Company**

5.     Plaintiff Kirill Zolotukhin purchased Qudian ADSs at artificially inflated prices pursuant to or traceable to the Company's IPO and on the open market during the Class Period, and as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto as Exhibit A.

**The Individual Defendants**

6.     Defendant Qudian is a corporation organized under the laws of the Cayman Islands. Qudian maintains its principal executive offices at 15/F Lvge Industrial Building, 1 Datun, Chaoyang District, Beijing 100012, People's Republic of China. The Company maintains an agent for service of process in the United States at Law Debenture Corporate Services, Inc., 400 Madison Avenue, 4th Floor, New York, NY 10017. During all relevant times, the Company's ADSs were listed on the New York Stock Exchange ("NYSE") under the ticker symbol "QD."

7.     Defendant Min Luo was, at all relevant times, Qudian's Founder, Chief Executive Officer ("CEO") and Chairman of the Board of Directors.

8.     Defendant Carl Yeung was, at all relevant times, the Company's Chief Financial Officer ("CFO").

9.     Defendant Shilei Li was, at all relevant times, a Director of the Company.

10.     Defendant Li Du was, at all relevant times, a Director of the Company.

11.     Defendant Chao Zhu was, at all relevant times, a Director of the Company.

12.     Defendant Yi Cao was, at all relevant times, a Director of the Company.

13.     Defendant Lianzhu Lv was, at all relevant times, a Director of the Company.

14.     Defendants Min Luo, Carl Yeung, Shilei Li, Li Du, Chao Zhu, Yi Cao, Lianzhu Lv are collectively referred to herein as the "Individual Defendants."

15.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(e)     was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(f)     approved or ratified these statements in violation of the federal ADSs laws.

16.     Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Qudian's business, operations, operational trends, financial statements, markets, and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

4

**The Underwriter Defendants**

17.     Under the terms and subject to the conditions in an underwriting agreement dated October 17, 2017, the underwriters named below (the "Underwriter Defendants") severally agreed to purchase, and Qudian agreed to sell to them, the number of ADSs indicated below, for which the Underwriter Defendants collectively are to receive $51,750,000 in discounts and commissions:

| Name | Number of ADSs |
| --- | --- |
| Morgan Stanley & Co. International plc | 14,252,850 |
| Credit Suisse Securities (USA) LLC | 5,616,890 |
| Citigroup Global Markets Inc. | 4,914,778 |
| China International Capital Corporation Hong Kong Securities Limited | 6,108,365 |
| UBS Securities LLC | 4,212,670 |
| Stifel, Nicolaus and Company, Incorporated | 819,148 |
| Needham & Company, LLC | 945,187 |
| Nomura Securities International, Inc. | 630,112 |
| **Total:** | 37,500,000 |

18.     Defendant Morgan Stanley & Co. International plc ("Morgan Stanley") acted as an underwriter for Qudian's IPO and solicited and sold the number of ADSs of Qudian indicated above. Morgan Stanley has offices located at 25 Cabot Square, Canary, Wharf, London E14 4QA, United Kingdom.

19.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") acted as an underwriter for Qudian's IPO and solicited and sold the number of ADSs of Qudian indicated above. Credit Suisse has offices located at Eleven Madison Avenue, New York, NY 10010.

20.     Defendant Citigroup Global Markets Inc. ("Citigroup") acted as an underwriter for Qudian's IPO and solicited and sold the number of ADSs of Qudian indicated above. Citigroup has offices located at 388 Greenwich Street, New York, NY 10013.

21.     Defendant China International Capital Corporation Hong Kong Securities Limited ("China International") acted as an underwriter for Qudian's IPO and solicited and sold the number of ADSs of Qudian indicated above. China International has offices located at 29/F, One International Finance Center, 1 Harbour View Street, Canal, Hong Kong.

5

22.     Defendant UBS Securities LLC ("UBS") acted as an underwriter for Qudian's IPO and solicited and sold the number of ADSs of Qudian indicated above. UBS has offices located at 1285 Avenue of the Americas, New York, NY 10019.

23.     Defendant Stifel, Nicolaus and Company, Incorporated ("Stifel") acted as an underwriter for Qudian's IPO and solicited and sold the number of ADSs of Qudian indicated above. Stifel has offices located at 501 North Broadway, One Financial Plaza, St. Louis, MO 63102.

24.     Defendant Needham & Company, LLC ("Needham") acted as an underwriter for Qudian's IPO and solicited and sold the number of ADSs of Qudian indicated above. Needham has offices located at 445 Park Avenue, New York, NY 10022.

25.     Defendant Nomura Securities International, Inc. ("Nomura") acted as an underwriter for Qudian's IPO and solicited and sold the number of ADSs of Qudian indicated above. Nomura has offices located at Worldwide Plaza, 309 West 49th Street, New York, NY 10019-7316.

26.     Pursuant to Section 11 of the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement (defined infra). The Underwriter Defendants assisted Qudian and the Individual Defendants in planning the IPO and were required to conduct an adequate and reasonable investigation into the business and operations of Qudian — a process known as a "due diligence" investigation. The Underwriter Defendants were required to conduct a diligence investigation in order to participate in the IPO. During the course of their "due diligence investigation" the Underwriter Defendants had continual access to confidential corporate information concerning Qudian's operations and financial prospects.

27.     In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with Qudian's lawyers, management and top executives and engaged in "drafting sessions" between at least February 2017 and October 2017. During these sessions, the Underwriter Defendants, Qudian, and/or the Individual Defendants made joint decisions regarding: (i) the terms of the IPO, including the price at which Qudian shares would be sold to the public; (ii) the strategy to best accomplish the IPO; (iii) the information to be included in the Registration Statement; and (iv) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Qudian's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, Qudian's existing problems as detailed herein.

28.     Qudian is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

29.     Qudian's Registration Statement, including the documents it incorporated by reference, contained materially untrue and misleading statements and/or omissions. Defendants negligently allowed the Prospectus to contain materially untrue and misleading statements and/or omissions to the extent that they knew or should have known that the Prospectus was materially misleading, but failed to act in a reasonable manner to prevent the Prospectus from containing materially misleading statements and/or preventing the materially misleading Prospectus from being disseminated. These claims, brought under Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o, are based solely on claims of strict liability and/or the absence of any affirmative defense based on the reasonableness of the pertinent Defendants' investigation into the

true facts. These claims are not based on any allegation of fraud, intentional wrongdoing, or severe recklessness.

## SUBSTANTIVE ALLEGATIONS

### A.    Company Background

30.    Qudian is a provider of online credit products using data-enabled technologies. The Company aims at using artificial intelligence and machine learning to target hundreds of millions of young consumers in China who need access to small credit. Through its online platform, Qudian offers cash credit products in digital form and merchandise credit products.

31.    On September 18, 2017, the Company filed a registration statement for foreign issuers on Form F-1 with the SEC. The registration statement was subsequently amended, with the final amended registration statement on Form F-1/A filed on October 13, 2017 (collectively, the "Registration Statement"). The Registration Statement was declared effective by the SEC on October 17, 2017. Qudian filed its prospectus on Form 424B4 with the SEC on October 18, 2017 ("Prospectus"). The Registration Statement and the Prospectus are collectively referred to herein as the "Registration Statement."

### B.    Materially False and Misleading Statements Issued During the Class Period

32.    The Class Period begins on October18, 2017 when Qudian filed its Prospectus with the SEC, which forms part of the Registration Statement.

### *The Registration Statement*

33.    In the Registration Statement, Qudian acknowledges the Company exposure to "many types of operational risks, including the risk of misconduct and errors by [its] employees and parties that [it] collaborate[s] with." The Registration Statement also warns investors against the risk of use and disclosure of personal information, stating in pertinent part:

Our business depends on our employees and/or business partners to interact with users, process large numbers of transactions, deliver merchandise purchased by borrowers, providing user and after-sale product services and support the collection process, all of which involve the use and disclosure of personal information. ***We could be materially and adversely affected if transactions were redirected, misappropriated or otherwise improperly executed***, if personal information was disclosed to unintended recipients or if an operational breakdown or failure in the processing of transactions occurred, whether as a result of human error, purposeful sabotage or fraudulent manipulation of our operations or systems.

Emphasis added.

34.     The purported warnings contained in ¶33 were materially false and/or misleading because the Registration Statement failed to disclose that: (1) Qudian engaged into unethical business and accounting practices, (2) Qudian failed to maintain adequate control to ensure the protection and safety of its users' personal information, and (3) consequently, Qudian was exposing detailed user data to leakages and online resales.

35.     Throughout the Registration Statement, the Company describes sophisticated measures to ensure data protection, stating in relevant part:

**Our Information Technology and Security**

*Overview*

Our network is configured with multiple layers of security modules to isolate our databases from unauthorized access. We use sophisticated security protocols for communication among applications and we encrypt private information, such as an applicant's identification number.

Our systems infrastructure is currently deployed and our data is currently maintained on customized cloud computing services. We believe by utilizing cloud computing we are able to quickly scale capacity and ensure there is sufficient bandwidth to meet the significant growth of our business and the increase in the number of our users, while reducing capital expenditure obligations. We have multiple layers of redundancy to ensure reliability of our systems and services. We also have a working data redundancy model with comprehensive backups of our databases and software.

Our technology and product development department, which comprised 193 employees as of June 30, 2017, including core team members with extensive

experiences with leading Internet, online retail and mobile commerce and fintech companies in China, focuses on the following that support our long-term business growth:

   •        maintaining and strengthening our proprietary data and analytics systems, including our decisioning engine, proprietary risk management system and fraud prevention system; and

   •        ensuring our technology system, including front-end and back-end management systems, call center and collection systems, financial systems, security protocols and business continuity plans are well established, reviewed, tested and continuously strengthened.

Emphasis added.

36.     Qudian collects, stores and processes personal sensitive information from its users. In the Registration Statement, Qudian assures investors that the Company has "taken steps to protect the confidential information."

37.     Moreover, the Company represents that it took "technical measures to ensure the security of such personal information and prevent the personal information from being divulged, damaged or lost."

38.     With regards to accounting practices, Qudian assures investors about "implemented payment and collection policies and practices designed to optimize regulatory compliant repayment, while also providing superior borrower experience."

39.     By mean of example, the Company describes how "automatic reminders through text, voice and instant messages are sent to a delinquent borrower as soon as the collections process commences," or how its "collection team will also make phone calls to borrowers following the first missed payment and periodically thereafter," or how it "may also conduct in-person visits" for larger amounts.

40.     Furthermore, the Company emphasizes the procedure for collection of bad debt, stating in relevant part:

We may stop collection efforts when credit drawdowns are 180 calendar days overdue and collection attempts have reached a certain number. In the event of (i) death of the borrower, (ii) identification of fraud, and the fraud is officially reported to and filed with relevant law enforcement departments or (iii) the amount remained outstanding 180 calendar days past due and therefore deemed uncollectible, we will charge off the relevant outstanding amount. Substantially all of our charge-offs since our inception were due to amounts that remain outstanding 180 calendar days past due and therefore deemed uncollectible.

41.     The statements contained in ¶35-40 were materially false and/or misleading because the Registration Statement failed to disclose that: (1) Qudian engaged into unethical business and accounting practices, (2) Qudian failed to maintain adequate control to ensure the protection and safety of its users' personal information, and (3) consequently, Qudian was exposing detailed user data to leakages and online resale.

### C.  The Truth Begins to Emerge

42.     On October 23, 2017, news media Technode reported that Qudian was going through a major crisis, as local Chinese media had begun to question the "sustainability, validity and morality" of the business ("October 23, 2017 Report"). The news reported in relevant part:

Days after its splashy US IPO, Chinese online loan provider Qudian is undergoing a major crisis as local media has begun questioning the sustainability, validity and morality of their business.

Born out of student-based Qufenqi, Qudian first grew by offering small loans to colleges students to capitalize on the rising spending power of China's younger generations. At the peak of the student micro-loan trend, the firm received investment of Alibaba's financial affiliate Ant Financial. This October, the red-hot Chinese fintech concept drew strong demand for the company to price the fourth-largest US IPO this year.

However, local media's queries have cast a shade on their prospects of the company. The criticisms are mainly aimed at the legitimacy of their business. As a major player in the student micro-loan sector, Qudian claims to have suspended student-targeted loans in November 2015 as the state has issued a ban on online loans to college students following public outrage over exorbitant rates, porn for payment, and various financial scams.

\*       \*       \*

In addition, the company's excessive reliance on Alipay for acquiring users, fund management and risk control also raised doubt of its sustainability and business independence as a listed company.

43.     In addition, the report provided details on the response of Defendant Min, Qudian's

CEO during an interview for a Chinese news reporter, in relevant part:

The firm is at a critical point, but company CEO Luo Min's response to the criticism only made the case worse. When being asked whether they will coerce users to borrow from relatives and other platforms whey they fail to pay back the loans, Luo's answered "*If the debts are overdue, that's a bad debt for us. In this case, we won't do anything to push them, not even a phone call. If you can't pay, we will just give it as a welfare. That's all*."

Emphasis added.

44.     On the release of the news, the price per Qudian's ADSs declined from a close at

$33 on October 20, 2017, to a close at $26.59 on October 23, 2017, *a drop of approximately*

*19.4%*.

### D.   Additional False and Misleading Statements During the Class Period

*The Q3 2017 Press Release*

45.     On November 13, 2017, the Company issued a press release also attached as exhibit

99.1 to the Form 8-K filed with the SEC announcing the Company's financial and operating results

for the second fiscal quarter and six month ended September 30, 2017 ("Q3 2017 Press Release").

For the quarter, the Company reported revenue of $218.1 million and net income of $97.8 million,

representing increases of 308% and 321.8% to the previous year's comparable quarter. The press

release stated in relevant part:

Mr. Min Luo, Founder, Chairman and Chief Executive Officer of Qudian, said, "We are pleased to report strong quarterly financial results for our very first quarter reporting as a public company. The key to our success has been our strong technology and highly competitive operational efficiency. We continue to experience high demand from our customers and see exceptional growth

opportunities, reflecting our leading market share position in online small consumption credit.

"Assisting our users to access credit responsibly while allowing our company to be competitive and drive sustainable growth is the balance we are committed to achieving as we continue to apply our disciplined, yet user-friendly collection efforts," continued Mr. Luo. "As of September 30, 2017, we had approximately 300 employees primarily responsible for collections and they are mainly based in our call center in Jiangxi Province. We remain excited about the future as we continue to develop new data technologies and enhanced service offerings, while operating within the developing regulatory framework to further explore the growing opportunities in the areas of installment credit for our users."

"We delivered excellent results in the third quarter with year-over-year revenue growth of 308%, as well as net income growth of 322% resulting from strong operational efficiency," said Mr. Carl Yeung, Chief Financial Officer of Qudian. "With total registered users in the quarter reaching 56.6 million, including 23.6 million users who have been approved for credit, the significant growth in active borrowers to 7.5 million led to strong year-over-year transaction growth. Most notably, sales commissions contributed 20% of total revenue in the third quarter of 2017, up from 5% last year, resulting in an enhanced margin structure.

"During the quarter, we continued to strike a healthy balance between growing revenues and managing credit risk," continued Mr. Yeung. "The volume of data we are collecting and processing continues to grow in scale and velocity, with over 26 million credit drawdowns facilitated in the quarter, thereby providing us valuable information about the Chinese consumer credit users. ***In addition, we continue to set industry leading responsible practices to provide credit to the underserved while ensuring data security.*** We are also proud to reiterate that since April of this year, the all-in annualized interest rate fees charged for all our products have been capped at 36%."

Emphasis added.

46.     The statements contained in ¶45 were materially false and/or misleading because the Registration Statement failed to disclose that: (1) Qudian engaged into unethical business and accounting practices, (2) Qudian failed to maintain adequate control to ensure the protection and safety of its users' personal information, and (3) consequently, Qudian was exposing detailed user data to leakages and online resale.

### E.  The Truth Emerges

47.     On November 21, 2017, various news outlets reported that the data from more than a million students, clients of Qudian was leaked and possibly sold online ("November 21, 2017 News"). For instance, Technode reported:

> The troubled micro-lending tycoon Qudian, which has been questioned for its operation ethics domestically upon massive US IPO, is facing a grimmer situation this week after local media Yiben Caijing reveals possible user information by its employees.
>
> ***The personal information of nearly 1 million students was on sale on black market at a price of RMB 100k***. The package was also being sold separately by province with files for each province consisting of tens of thousands of entries. For example, the file for Jiangsu Province includes 51,289 entries. "Data from Beijing, Shanghai and Jiangsu was priced at RMB8,000," the report citing people familiar with the matter.
>
> ***These data include a wide range of personal info from generalities like names, addresses, phone numbers to more detailed data such as phone numbers of their parents and friends, loan size, accounts and passwords to CHIS, the state-backed higher-education qualification verification institution in China***.
>
> Peddlers claim that Qudian is the source of this package. ***A former Qudian employee, who speaks under anonymity, confirmed this after comparing the leaked info with the data she owned, the report pointed out***. Analysts told Yiben Caijing that the data is more likely to be exported by an insider than from a hacker because it's saved in a CSV format.
>
> It's no secret that the personal information leak is rampant in China with details of million of citizens being stolen, shared, and sold online. The source of data leakage varies from government workers to tech companies, and the data usually goes to agencies and private investigation companies for user acquisition.
>
> Earlier this June, 22 Apple distributors were arrested in China for selling user data. Likewise, a former user information leakage forced Chinese e-commerce JD to issue an official announcement to apologize for the subsequent results.
>
> Of course, the recurring personal info leak cases have raised the awareness of relevant authorities. The newly implemented Cybersecurity Law of China prescribes that people who sales a minimum of 50 entries of personal information will be accused and convicted.

Emphasis added.

14

48.     Similarly, on November 23, 2017, Bloomberg reported, in relevant part:

The probe's initial findings show that at least part of the leaked data match information clients had provided to Qudian, the people said. Investigators are checking whether the data came from Qudian, if the company was aware of the breach, and whether it took necessary measures to ensure the safety of personal information it collects.

Qudian said it isn't aware of the situation in an e-mailed reply to questions. The company added that it has always highly valued safeguarding customers' personal information, and that it continues to improve its encryption and data security.

Two calls to the Ministry of Public Security went unanswered.

Qudian's shares have slumped 33 percent since its initial public offering in New York in October, as China's government moved to crack down on the mushrooming industry of online cash microlending. Such lenders typically offer quick, short-term unsecured loans that are used for consumption.

The Chinese company's IPO prospectus didn't mention any leaks of data containing customer information. Violations of protecting personal information carries possible penalties including shutdown of websites or cancellation of business licenses under China's Cybersecurity Law.

49.     From the release of the news on November 21, 2017, the price per Qudian's ADSs declined from a close at $20.08 on November 20, 2017, to a close at $12.22 on November 24, 2017, *a drop of approximately 39.1%*.

50.     At the time of the filing of this action, and following these disclosures, the Company's ADSs traded as low as $11.33, *a decline of approximately 52.8%* from its IPO price of $24 per share less than two months before.

51.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure on behalf of all persons who purchased or otherwise acquired the Company's

ADSs during the Class Period and/or pursuant or traceable to the Registration Statement issued in

connection with the IPO (the "Class"). Excluded from the Class are Defendants and their families,

the officers and directors of the Company, at all relevant times, members of their immediate

families and their legal representatives, heirs, successors, or assigns, and any entity in which

Defendants have or had a controlling interest.

53.     The members of the Class are so numerous that joinder of all members is

impracticable. Throughout the Class Period, Qudian ADSs was actively traded on the NYSE.

While the exact number of Class members is unknown to Plaintiff at this time and can be

ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or

thousands of members in the proposed Class. Record owners and other members of the Class may

be identified from records maintained by Qudian or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in

securities class actions. Upon information and belief, these shares are held by hundreds if not

thousands of individuals located geographically throughout the country and possibly the world.

Joinder would be highly impracticable.

54.     Plaintiff's claims are typical of the claims of the members of the Class as all

members of the Class are similarly affected by the defendants' respective wrongful conduct in

violation of the federal laws complained of herein.

55.     Plaintiff has and will continue to fairly and adequately protect the interests of the

members of the Class and have retained counsel competent and experienced in class and securities

litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

56.     There is a well-defined community of interest in the questions of law and fact

involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members, including:

(a)     Whether the Securities Act was violated by the defendants;

(b)     Whether the Registration Statement contained false and misleading statements of material fact and omitted material information required to be stated therein;

(c)     To what extent the members of the Class have sustained damages and the proper measure of damages.

57.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**LOSS CAUSATION AND ECONOMIC LOSS**

58.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's ADSs price, and operated as a fraud or deceit on acquirers of the Company's securities. As detailed above, when the truth about Qudian's misconduct and its lack of operational and financial controls was revealed, the value of the Company's securities declined precipitously as the prior artificial inflation no longer propped up its ADSs price. The decline in Qudian's share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the ADSs price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants'

17

fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's ADSs price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

59.     At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Qudian's business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Qudian's securities to be artificially inflated. Plaintiff and other Class members purchased Qudian's securities at those artificially inflated prices, causing them to suffer the damages complained of herein.

## SCIENTER ALLEGATIONS IN SUPPORT OF EXCHANGE ACT VIOLATIONS

60.     Collectively, the following factual allegations strongly support an inference of scienter on the part of Defendants. Further, Defendants' actions, intentions, and deliberately reckless conduct are imputed to the Company as a matter of law. Because of their key roles in the Company, the Individual Defendants caused Qudian to act in the manner it did and perpetuate the material misrepresentations and omissions it made throughout the Class Period. Defendants acted with the requisite intent to establish liability under the Exchange Act. Their conduct with respect to Qudian's statements was intentionally misleading and/or reckless with regard to the risk of investors being misled.

61.     For the reasons stated above, the factual allegations strongly support an inference

of scienter on the part of Defendants.

## PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET

62.    At all relevant times, the market for Qudian securities was an efficient market for the following reasons, among others:

    a) Qudian securities met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient market;

    b) During the Class Period, Qudian securities were actively traded, demonstrating a strong presumption of an efficient market;

    c) As a regulated issuer, Qudian filed with the SEC periodic public reports during the Class Period;

    d) Qudian regularly communicated with public investors via established market communication mechanisms;

    e) Qudian was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

    f) Unexpected material news about Qudian was rapidly reflected in and incorporated into the Company's ADSs price during the Class Period.

63.    As a result of the foregoing, the market for Qudian securities promptly digested current information regarding Qudian from all publicly available sources and reflected such information in Qudian's ADSs price. Under these circumstances, all purchasers of Qudian securities during the Class Period suffered similar injury through their purchase of Qudian's securities at artificially inflated prices, and a presumption of reliance applies.

64.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered the Company's true net losses and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell ADSs in Qudian.

## NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

65.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Qudian who knew that the statement was false when made.

## CLAIMS FOR RELIEF

### COUNT I
### *Violation of Section 11 of the Securities Act Against All Defendants*

66.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

67.     This Count is asserted by Plaintiff on behalf of themselves and the Class against all the Defendants and is based upon Section 11 of the Securities Act, 15 U.S.C. § 77k.

68.     The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

69.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omission of any material facts and were not misleading.

70.     By reason of the conduct herein alleged, each defendant violated §11 of the Securities Act.

71.     Plaintiff acquired the Company's ADSs pursuant and/or traceable to the IPO. Plaintiff and the Class have sustained damages. The value of the Company's ADSs has declined substantially subsequent to and due to defendants' violations.

72.     At the time of their purchases of the Company's ADSs, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the fact upon which this Complaint is based to the time that plaintiff commenced this action. Less than

three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff commenced this action.

73.     By reason of the foregoing, Plaintiff and the other members of the Class are entitled to damages as measured by the provisions of Section 11(e), 15 U.S.C. 77K(e), from the Defendants and each of them, jointly and severally.

## COUNT II
### *For Violation of Section 15 of the Securities Act Against the Individual Defendants*

74.     Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein. This Count is brought pursuant to §15 of the Securities Act against the Individual Defendants.

75.     The Individual Defendants each were control persons of the Company by virtue of their positions as directors and/or senior officers of the Company.

76.     The Individual Defendants were each culpable participants in the violation of §11 of the Securities Act, alleged in Count I above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process that allowed the IPO to be successfully completed.

77.     None of the Individual Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus and Registration Statement were accurate complete in all material respects. Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

78.     This claim was brought within one year after the discovery of the untrue statements and omissions in the Prospectus and Registration Statement and within three years after the Company's securities were sold to the Class in connection with the IPO. It is therefore timely.

79.    By reason of the above conduct, for which the Company is primarily liable as set forth above, the Individual Defendants are jointly and severally liable with and to the same extent as the Company's pursuant to Section 15 of the Securities Action, 15 U.S.C. 77o.

### COUNT III
### *Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against Defendant Qudian Defendant Min Luo and Defendant Carl Yeung*

80.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

81.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Qudian ADSs at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, each of the Defendants took the actions set forth herein.

82.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's ADSs in an effort to maintain artificially high market prices for Qudian securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

83.    Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about the business, operations, and future prospects of Qudian as specified herein.

84.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Qudian's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Qudian and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Qudian ADSs during the Class Period.

85.     Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

86.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Qudian's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

87.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Qudian's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Qudian's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the ADSs trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Qudian's ADSs during the Class Period at artificially high prices and were or will be damaged thereby.

88.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Qudian's financial results,

which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Qudian securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

89.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

90.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's ADSs during the Class Period.

91.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of ADSs giving rise to the cause of action.

<u>**COUNT IV**</u>
<u>*Violation of Section 20(a) of the Exchange Act Against Defendant Min Luo and Defendant*</u>

<u>*Carl Yeung*</u>

92.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

93.     The Individual Defendants acted as controlling persons of Qudian within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants provided

with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

94.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

95.     As set forth above, Qudian, the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

96.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's ADSs during the Class Period.

97.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of ADSs giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)     Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all

damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d)     Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.


Dated: December 19, 2017                    /s/ Eduard Korsinsky
                                            **LEVI & KORSINSKY, LLP**
                                            Eduard Korsinsky
                                            30 Broad Street, 24th Floor
                                            New York, NY 10004
                                            Tel: (212) 363-7500
                                            Fax: (212) 363-7171
                                            Email:ek@zlk.com